Austin Lynch, Canton, and Bowers & Bowers, New Philadelphia, for plaintiff in error.

Mather, Denlinger and Patterson, Wilkin, Fisher & Limbach, New Philadelphia, for defendants in error.

## MARKLEY et v RIDGEWAY

Ohio Appeals, 5th Dist, Tuscarawas Co

No 411. Decided April, 1933

LEMERT, J.

The petition in error in this court contains seven (7) specific assignments of error; however, in the presentation of this case, the sole and only ground relied upon is that the verdict of the jury is against the manifest weight of the evidence. The plaintiff claimed that he was employed by the defendants to perform work for them and that in conformity with said employment, he rendered the services requested by the defendants over a period of time extending from July, 1924, until December, 1926. The defendants not only deny that the plaintiff was employed by them but deny that any work was performed for them by the plaintiff and also deny that the defendants were desirous of selling their property during the foregoing period. In consequence of the foregoing issue of fact, there was a substantial and material conflict in the pleadings and in the evidence.

From an examination of the record, we find the plaintiff testifying one way and the defendant, Markley, for himself and for his corporate associates testifying in an opposite way. However, there is an abundance of documentary evidence in the record before us and the jury had the same before them in their consideration of this case in the court below.

It is evident from examination of the record that Mr. Markley was negotiating for the sale of a substantial portion of the properties envolved in this case in June of 1924. The evidence shows that he interviewed one Charles Waters whom he met through Mr. T. A. Williams and W. D. Davis but no sale was consummated with Mr. Williams but afterwards Mr. Davis and Mr. Williams produced other purchasers and

that Mr. Markley negotiated with other purchasers after he obtained a release from Mr. Waters and that thereafter negotiations were made with the Fall-Snyder Company.

While it is plain and clear that there was an attempt in the court below on the part of Mr. Markley to deny his connection with the different companies and particularly that he was a Director in the same, yet, when he was confronted with the minutes of the new company, the Federal Clay Products, Inc. shown as Exhibit "A," he was of course compelled to admit that his signature appeared in such minutes in four or five different places. An attempt was made to explain away the damaging effect of this testimony and his signature in the minutes of the purchasing company by saying he was a director before any purchase was made and that such company never did purchase any of the assets owned by him or the defendant corporation. The record however establishes the falsity of such testimony. The fact remains however that Mr. Markley occupied the position of Chairman of the Board of Directors in a Company which was organized for the purpose of purchasing valuable properties from him and from the companies of which he was practically the sole owner and yet he made the claim that he was at no time desirous of selling these properties.

There was an attempt in the court below to shift the responsibility for the employment of Ridgeway to someone else. The testimony shows however, that Mr. Markley met Davis and Williams who were his agents to sell the property, before he ever met Mr. Ridgeway. Markley made the claim that he didn't deliver to Ridgeway the appraisal reports of the American Appraisal Company, or if they were delivered to Ridgeway, they were delivered by Williams and Davis. However, on page 36 of the record as shown by Exhibit "C" he admits furnishing information to Ridgeway and admits the continuation of negotiations with him. We find in examining Exhibit "E" signed by Mr. Markley and directed to Mr. Ridgeway he authorizes him to furnish his audit and report to R. G. Dunn & Co. and the Bradstreet Company. The claims made by Mr. Markley in his petition and in his testimony become absurd and unbelievable when plaintiff's Exhibit "E" is considered. It is inconceivable that a cautious, careful and prudent business man such as Mr. Markley authorized a statement and audit to be broad cast through out the country through two Mercantile

Agencies mentioned when he never saw such audit. Mr. Markley admits as shown by the record on pages 44 and 45 that he directed Mr. Ridgeway to furnish the information in the audit to Bradstreet and Dunn and that he knew that Ridgeway had prepared information regarding Markley's Companies and the various properties. The record discloses that Mr. Ridgeway had been down to Mr. Markley's plants a number of times. The record discloses that Mr. Ridgeway furnished Mr. Markley with a preliminary report in August and a more complete report in November and that the complete report was delivered to Mr. Markley at Mineral City, a copy of which is attached to the bill of exceptions and marked Exhibit "Y". On pages 106 to 111 of the record, we find various items of information furnished to Mr. Ridgeway to enable him to prepare the report which was subsequently prepared and submitted to the defendants, and at page 113 is a copy of the agreement signed by the defendant Markley, individually and the Federal Clay Products Company and the Holden Clay Products Company as of June 15, 1925, which was approximately a year after Mr. Ridgeway started to work. This agreement signed by Mr. Markley shows that Mr. Markley endeavoring to sell his properties substantiates the plaintiff's testimony to the effect that the negotiations were practically continuous throughout the period claimed by the plaintiff.

While the record in this case is voluminous, yet under all the circumstances in this case it is apparent that the issues were sharply defined and that the conflict in evidence was material and substantial. The jury after a week's trial hearing the witnesses who testified and observing their demeanor on the stand, resolved the issues in favor of the plaintiff. They elected in the exercise of their solemn promise to believe the plaintiff and disbelieve the defendant. Their verdict is not shocking to the conscience when the entire record is taken altogether as a whole.

That the Court of Appeals will not reverse the judgment of the trial court based upon the verdict of a jury where there is substantial and material conflict of the evidence is a principle which is well established. An examination of the bill of exceptions herein discloses that five full days were consumed in the introduction of evidence; various witnesses called by both the plaintiff in error and the defendant in error were fully examined and cross examined. We have carefully examined the collection of Exhibits attached to the bill of exceptions. The case was submitted to the jury by the court after giving the jury a clear and concise statement of the law applicable to the issues joined. After three and a half hours of deliberation during which time the jury must have carefully and considerately weighed the facts introduced before them, they reached a verdict in favor of the plaintiff. When we consider the amount of the verdict, we believe the same is reasonable under all the circumstances and under the evidence which was before the jury. We can see no reason why there should be a reversal of the judgment of the Common Pleas Court on the weight of the evidence. The principle is so well established, that the finding of the jury will not be reversed by the reviewing court unless **manifestly** against the weight of the evidence.

It, therefore, follows that the judgment of the Common Pleas Court will be and the same is hereby affirmed.

Exceptions may be noted.

SHERICK, PJ, and MONTGOMERY, J, concur.